IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARLEYSVILLE WORCESTER   :
INSURANCE COMPANY     :
             :   CIVIL ACTION
    v.        :
             :   NO. 20-4863
             :
GATEWAY PETROLEUM TECHNOLOGY INC.,:
ET AL.            :

**<u>MEMORANDUM</u>**

**SURRICK, J.**             **SEPTEMBER 30, 2021**

   Plaintiff Harleysville seeks a determination that it has no duty to defend or indemnify Defendant Gateway Petroleum Technology in a civil action brought by Watson Service Station. In the underlying action, Watson alleges that Defendants Gilbarco, NCR, and Gateway supplied and installed a malfunctioning fuel system at Watson Service Station (hereafter "Watson") which caused Watson to suffer economic losses.  Harleysville, the insurer of Gateway, a defendant in the underlying action, now contends that they have no duty to defend Gateway in that action. Gateway asserts a counterclaim against Harleysville for bad faith.  Harleysville has filed a Motion for Judgment on the Pleadings arguing that: (1) it has no duty to defend Gateway in the underlying action, and (2) Gateway's counterclaim for bad faith against Harleysville should be dismissed.  For the following reasons the Motion for Judgment on the Pleadings will be denied since genuine issues of material fact still exist.

**I.   BACKGROUND**

   The underlying action forming the basis of this declaratory judgment action stems from the installation of fuel system components which failed to work and allegedly caused Watson to suffer damages.  Watson, plaintiff in the underlying action, was a franchisee of Sunoco gas

station in Bensalem, Pennsylvania.  Watson purchased, among other things, a Gilbarco Fuel System and an NCR Panther Fuel Control Box, which were required to operate as a franchisee of Sunoco.  (Compl. ¶ 14, ECF No. 1.)  Watson hired Gateway to install the NCR Control Box into the Gilbarco Fuel System.  On September 12, 2017 after it was installed, Gateway started up the Fuel System and tested the Systems for proper operation.  *Id*. at ¶ 15.

On September 13, 2017, Watson noticed the Gilbarco Fuel System and the Fuel Control Box were not properly operating.  *Id*. at ¶ 17.  After being notified of the problem, Gilbarco hired Gateway to repair and correct the defects.  In December of 2017, Watson noticed a continuing defect with the operation of the Fuel System and Control Box, as they were dispensing fuel into vehicles but failing to charge the credit cards of the customers.  *Id*. at ¶ 36.  Gilbarco then attempted to remediate the problem by installing resisters in the NCR Control Box, but this also was not successful, and it then began refunding customers after they pumped their fuel.  *Id*. at ¶ 23.  On May 10, 2018, Sunoco notified NCR of the problems and requested a new NCR Control Box.  NCR sent a new Control Box on September 13, 2018.

Watson filed a complaint against Gilbarco, NCR, and Gateway seeking recovery of economic losses in connection with the malfunctioning equipment and alleging counts for Breach of Contract.  (Underlying Compl., Mot. Judgment on Pleadings Ex. B, EFC No. 42.)  Watson specifically alleges that defendants Gilbarco, NCR, and Gateway knew that the NCR Control Box and the Gilbarco Fuel System were incompatible before they were delivered and installed at Watson Service Station.  *Id*. at ¶ 24.

Gateway held a Commercial General Liability insurance policy with Harleysville Insurance Company at all relevant times.  (*Watson* Compl. at ¶ 28.)  Upon being served with the underlying complaint, Gateway turned it over to Harleysville.  (Answ. ¶ 103, ECF No. 7.)  On

July 6, 2020, Harleysville issued a Denial of Defense and Indemnity Letter to Gateway.  In its

denial letter, Harleysville cited the boilerplate language of "Occurrence." However, in Gateway's

specific policy, Endorsement CG-7427 offered Gateway broadened coverage and an expanded

definition of an "Occurrence."  *Id*. at ¶ 103, 107-10.  Gateway alleges that Harleysville's denial

of defense was premature and in error.  Harleysville later rescinded its denial and agreed to

defend Gateway under a reservation of rights.  Harleysville then filed this Complaint, requesting

a declaratory judgment that it is not required to defend and/or indemnify Gateway in the

underlying Watson action.  In its Answer, Gateway asserts a counterclaim against Harleysville

alleging bad faith.  *Id*. at ¶ 178.

Harleysville now brings this Motion for Judgment on the Pleadings on both its

affirmative claim for a declaratory judgment that it has no duty to defend Gateway, and on

Gateway's counterclaim of bad faith against Harleysville.

## II.   LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that a motion for judgment

on the pleadings may be made "after the pleadings are closed but within such time as not to delay

the trial."  Fed. R. Civ. P. 12(c).  To succeed on a motion under Rule 12(c), the movant must

clearly establish that no genuine issues of material fact remain and that "he is entitled to

judgment as a matter of law."  *Damron v. Smith*, 616 F. Supp. 424, 425 (E.D. Pa. 1985) (citing

*Flora v. Home Federal Savings and Loan Association*, 685 F.2d 209, 211 (7th Cir. 1982)).

When deciding a motion for judgment on the pleadings, the court must view the pleadings in the

light most favorable to the non-moving party and grant the motion only if it is beyond doubt that

the non-movant can plead and prove no facts that would support his claim for relief.

*Constitution Bank v. DiMarco*, 815 F. Supp. 154, 157 (E.D. Pa. 1993) (citing *U.S. v. Wood*, 925

F.2d 1580, 1581 (7th Cir. 1991)).  As in a Rule 12(b)(6) motion, the court must not look beyond

the pleadings.  Fed. R. Civ. P. 12(d).

Under Pennsylvania law, the interpretation of an insurance contract is a question of law.

*401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 170 (Pa. 2005).  The task of

interpreting an insurance contract is generally performed by the court rather than a jury, and

"[t]he purpose of that task is to ascertain the intent of the parties as manifested by the terms used

in the written insurance policy."  *Id*. at 171.

### III.    DISCUSSION

Harleysville moves for Judgment on the Pleadings on both their affirmative claim for a

declaratory judgment on their duty to defend, and on Gateway's counterclaim alleging bad faith

against Harleysville.

### A.    Count I: Harleysville's Affirmative Claim and Duty to Defend

Harleysville presents various arguments contending that this Court should grant its

Motion and rule that Harleysville has no duty to defend Gateway in the underlying action.  These

arguments will be addressed below in turn.

#### i.    *Applicable Law*

In determining whether an insurance carrier has a duty to defend its insured,

Pennsylvania Courts apply the four-corners rule.  Under the four-corners rule, the question of

whether the insurance company must defend a claim against an insured is answered by

comparing the four corners of the insurance contract to the four corners of the complaint.  *Sapa*

*Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 252 (3d Cir. 2019).  Courts may not look

to any outside evidence in making this determination.  *Id*.  Said another way, a duty to defend

arises whenever the underlying complaint may potentially come within the insurance coverage

afforded in the policy. *Penn Nat'l Ins. v. HNI Corp.*, 482 F. Supp. 2d 568, 607 (M.D. Pa. 2007) (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)).  In addition, if even a single claim in a multiclaim lawsuit could be covered by the policy, the insurer has the duty to defend all claims "until there is no possibility that the underlying plaintiff could recover on a covered claim." *Id.*

Generally, insurance policies should be read as a whole and construed in accordance with their plain meaning. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F. Supp. 423, 427 (E.D. Pa. 1994)). However, in interpreting Pennsylvania insurance policies, a court should "consider [the] policy from the point of view of the insured and construe [the] policy most strongly against the insurer." *Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 533 (1987).  Where an ambiguity is found in a provision of an insurance policy, the provision should be construed against the insurer as the drafter of the instrument. *Frog, Switch & Mfg. Co*, 857 F. Supp. at 746. In contrast, where the language of a contract of insurance is clear and unambiguous, a court is required to give effect to that language. *Stump v. State Farm Mutual Automobile Insurance Co.*, 564 A.2d 194, 196 (Pa. Super Ct.1989).  A provision of an insurance policy is ambiguous if reasonable people considering it in the context of the entire policy could fairly and honestly differ as to its meaning. *Frog, Switch & Mfg. Co*, 857 F. Supp. at 746.

When an insurer contends that coverage under its policy is precluded by a policy exclusion, it bears the burden of proving that the exclusion applies. *Erie Ins. Exch.*, 516 Pa. at 533.

ii.        *Scope of the Harleysville Policy*

The policy between Harleysville and Gateway includes Commercial General Liability

(hereinafter "CGL") coverage.  With regard to such coverage, the policy states in relevant part:

> b.  This insurance applies to… "property damage" only if: (1) The "bodily injury"
> … is caused by an "occurrence" that takes place in the "coverage territory" …

(Harleysville Policy § I(A)(1)(a).)  The policy defines "occurrence" as "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions."

(Harleysville Policy § V(13).)  Under the policy, an "accident" includes:

> b. "Property Damage" to: (1) the property of others; or (2) "Your work," if "your
> work" was (a) Damaged by the work of a subcontractor who performed work on
> your behalf in the construction, alteration, renovation, repair or maintenance of a
> building, structure, highway, road, bridge, water line, sewer line, oil line, gas line,
> appurtenance or other improvement to real property, including any moving,
> demolition or excavation; and (b) The resulting "property damage" is included in
> the "products-completed operations hazard".

(Harleysville Policy § V(13).)  Therefore, whether Harleysville has a duty to defend Gateway in

the underlying suit depends upon whether there was an "occurrence" triggering coverage.  When

an "occurrence" is defined as an "accident" under a CGL policy, as it is here, courts look to the

ordinary definition of the word "accident" to examine "whether the damage that is the impetus of

[the] suit was caused by an accident, so as to constitute an occurrence under the policy."

*Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897-

98 (Pa. 2006).

iii.        *"Occurrence" Under Gateway's Policy*

Under Pennsylvania law, when, in an insurance contract, an "occurrence" is defined as an

"accident," claims based in a theory of "faulty workmanship" or "faulty construction" are not

considered an "occurrence" which would trigger an insurer's duty to defend.  *Kvaerner*, 908

A.2d at 899.  In applying this law, the *Kvaerner* Court reasoned that "such claims simply do not

6

present the degree of fortuity contemplated by the ordinary definition of 'accident.'"  *Id.* at 897-99 (defining "accident" as "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally." (quoting Webster's II New College Dictionary 6 (2001))). Therefore, if a claim is based upon the insured's faulty workmanship that caused damage to the insured's work product, the insurer has no duty to defend.  *Id.* at 899.

One exception to the *Kaverner* rule was established in the case of *Indalex Inc. v. Nat'l Union Fire Ins. Co.*, 83 A.3d 418, 421 (Pa. Super. Ct. 2013).  In *Indalex*, homeowners sued Indalex, alleging it had defectively designed and manufactured windows and doors installed in their house, which caused a water leak that damaged their home and property. *Id*. at 419-20. Indalex, in the declaratory action, argued that their insurer had a duty to defend them because the claims were based upon claims of a "faulty product" or a malfunction of the product, rather than faulty workmanship of the insured.  *Id*. at 424.  The Superior Court of Pennsylvania agreed and held that the insurer had a duty to defend because the underlying products liability claims alleged a "bad product" and "active malfunction," not merely faulty workmanship.  *Id*. at 424-25.

Many cases have since been brought attempting to expand the "faulty workmanship" exception to include all cases where the alleged damages are to "another's property" rather than to the subject of the insured's work (i.e., their work product).  This is essentially what Defendant advocates here.  Defendant argues that Harleysville has a duty to defend because the alleged damages were to property other than Gateway's work product (i.e., Watson's revenue suffered the damages, rather than the installed products themselves).  However, the Third Circuit has, in two separate cases, found that *Kvaerner* and its progeny have foreclosed the possibility that there could be an "occurrence" where faulty workmanship causes damage to property other than the insured's work product.  *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 597 (3d Cir.

7

2009) (citing *Millers Capital Ins. Co v. Gambone Bros. Dev. Co.*, 941 A.2d 706 (Pa. Super. Ct. 2007); *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 239 (3d Cir. 2010); *Hagel v. Falcone*, 116 A.3d 698 (Pa. Super. Ct. 2014).  Pennsylvania courts and district courts in the Third Circuit have consistently come to this same conclusion in cases where the faulty workmanship caused foreseeable damage to property other than the insured's work product.  *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1237 (Pa. Super. Ct. 2009) (holding that, although damage caused by the malfunctioning furnace was done to property other than the insured's work product, the insurer had no duty to defend because the claims were for poor workmanship); *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 238-39 (3d Cir. 2010) (finding no duty to defend where the damage was caused by water leaks resulting from faulty workmanship because those damages were a foreseeable result of faulty workmanship); *Quality Stone Veneer, Inc. v. Selective Ins. Co. of Am.*, 229 F. Supp. 3d 351, 360 (E.D. Pa. 2017) (finding that allegations of damage to more than the insured's work product did not constitute an "occurrence" under the policy).  Contrary to the arguments made, and rejected, in these cases, in *Indalex* the claims were framed in terms of a "bad product" which was construed as an "active malfunction," not merely faulty workmanship.  *Indalex Inc.*, 83 A.3d at 421.  The most critical element in *Indalex* which distinguished it from *Kvaerner* was that the claims were for products liability torts, based on damages to persons or property other than the insured's work product. *Id.*; *Northridge Vill., L.P. Travelers Indem. Co.*, 2017 U.S. Dist. LEXIS 140541, at *23 (E.D. Pa. Aug. 31, 2017).

> *Kvaerner* and its progeny created a framework for commercial liability insurance policies that distributes the risks in a project.  As such, if damages occur because of the failure of the insured in the work process, the risk and liability fall on the insured.  However, if the product

itself fails and causes injury or damage to third parties, the insurer is responsible for defense of the insured and indemnification of the loss. *Kvaerner*, 908 A.2d at 897-99 (citing *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 685 A.2d 581 (Pa. Super. 1996)); *Indalex Inc.*, 83 A.3d at 421.

Here, Watson, in the underlying action, is suing Gateway, the insured, for recovery of economic losses in connection with the malfunctioning Gilbarco Fuel System and NCR Control Box, which Gateway installed and attempted to fix. However, in its complaint, Watson specifically alleges that Gateway knew the Systems were incompatible before they were installed and installed them anyway, without informing Watson. (Underlying Compl. ¶ 22-25.) In Harleysville's Complaint, it alleges that Watson is seeking recovery in connection with the "defective and/or incorrectly installed equipment" which caused its damages. (Compl. ¶ 13.) Therefore, it is not clear from the pleadings whether a defective system caused the damage or whether the insured's faulty installation of the NCR Control Box caused the damage to Watson's property. If the damage was caused by the system's defect (i.e. because the NCR Control Box and the Gilbarco System were inherently incompatible), then this case is similar to *Indalex*, where the damage was caused by a "faulty product" and could be described as an "active malfunction." If that is the case, Harleysville would have a duty to defend Gateway under the applicable case law. If, however, Gateway committed a "faulty installation" of the system that caused it to not work correctly, producing damages, then Harleysville would have no duty to defend Gateway, under *Kvaerner*.

At this juncture, there is a genuine question of material fact that precludes granting the Motion for Judgment on the Pleading. Harleysville must clearly establish that no genuine issues of material fact remain and that it is entitled to judgment as a matter of law. *Damron*, 616 F.

Supp. at 425.  There is a question of fact as to what caused the damages Watson is claiming:

either the malfunction of the Systems working together or faulty installation by Gateway.

Therefore, the Motion for Judgment on the Pleadings as to this count must be denied.

iv.  <em>"Electronic Data" Exclusion</em>

Alternatively, Harleysville argues that Watson's alleged losses stem from "electronic

data" which is not considered "tangible property" under the policy.  In the policy at issue,

"property damage" is defined as:

> (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> For the purposes of this insurance, electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

(Harleysville Policy § IV(17).)  Further, the policy also includes the following exclusion:

> Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.
>
> As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

(Harleysville Policy § I(A)(2)(p).)  Plaintiff argues the damages at issue in this matter fall under

this "electronic data" exclusion and, thus, they have no duty to defend.  Specifically, Harleysville

asserts that Watson's claims arise out of its inability to bill customers due to lost credit card data

– i.e., electronic data.  In response, Gateway argues that this exclusion does not apply, as

10

Gateway's work had nothing to do with any "electronic data" and they never programmed any electronic equipment or data in conjunction with this work.

A Motion for Judgment on the Pleadings may only be granted if it is beyond doubt that the non-moving party can plead and prove no facts that would support his claim for relief. *U.S. v. Wood*, 925 F.2d at 1581.  The damages stemming from Gateway here stem from their alleged negligent installation of the NCR Control Box to the Gilbarco Fuel System.  The relevant allegations are that the fuel pumps did not work properly with the NCR Control Box system – specifically that the system could not read the credit cards and dispensed fuel too slowly or not at all.  The basis of these claims is not damage to, loss of, or inability to access electronic data.  The basis is the failure of the NCR Control Box and Gilbarco System to work together to perform their intended function.  Accordingly, these claims do not fall under the "electronic data" exclusion to the policy.

> v.   *"Impaired Property" Exclusion*

Finally, Harleysville argues that it does not have a duty to defend Gateway for any claims by Watson related to the loss of revenue, sales, customers, goodwill, and future sales due to the inoperable or malfunctioning pumps under the "impaired property" exclusion to the policy.  That exclusion states:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(Harleysville Policy § I(A)(2)(m).)  Further, the policy defines "impaired property" as:

> "Impaired property" means tangible property, other than "your product" or
> "your work", that cannot be used or is less useful because: (a) It incorporates
> "your product" or "your work" that is known or thought to be defective,
> deficient, inadequate or dangerous; or (b) You have failed to fulfill the terms of
> a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment
> or removal of "your product" or "your work" or your fulfilling the terms of the
> contract or agreement.

(Harleysville Policy § V(8).)  Harleysville argues that, based upon these policy provisions, while
the policy does provide coverage for the loss of use of tangible property that is not physically
injured, as occurred here, it excludes coverage when the reason the property can no longer be
used is due to work performed by the insured.

In response, Defendant argues that the NCR Control Box and Gilbarco Fuel systems were
not Gateway's product, nor did the system incorporate any of Gateway's work.  Gateway argues
that even if "impaired property" was involved, no evidence exists that "such property can be
restored to use by the repair, replacement, adjustment or removal of "your product" or "your
work" or your fulfilling the terms of the contract or agreement."  Most importantly, Gateway
points out that at this juncture it is unknown what, how, and who caused the problems with the
Systems at Watson's.  This is true and is the lynchpin issue that requires denial of this motion
under the analysis in Section (III)(A)(iii).  We agree and find that there are genuine issues of
material fact as to who and what caused the malfunction, and it cannot be definitely said that
Gateway was the reason the Systems could not be effectively used.  Therefore, this argument
must be rejected, and the Motion for Judgment on the Pleadings must be denied.

**B.    Count II: Gateway's Bad Faith Counter Claim**

Harleysville also moves for Judgment on the Pleadings on Gateway's counterclaim
against them for Bad Faith.

    *i.*   *Applicable Law*

Under Pennsylvania law "to prevail in a bad faith insurance claim pursuant to Section

8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not

have a reasonable basis for denying benefits under policy and (2) that the insurer knew or

recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash.*

*Nat'l Ins. Co.*, 170 A.3d 364, 377 (2017) (citing *Terletsky v. Prudential Property & Cas. Ins. Co.*,

649 A.2d 680 (Pa. Super. Ct. 1994)).

    *ii.*   *Application*

In support of their motion, Harleysville argues that Gateway's claim for bad faith should

be dismissed because there was a reasonable basis on which to initially deny coverage and to

then proceed on the more conservative approach of reserving rights, while proceeding to

determine duties in a declaratory judgment action.  Harleysville asserts its conduct was

reasonable in initially denying the claim and then proceeding under a reservation of rights, in

accordance with the recommended course of action established by the Pennsylvania Supreme

Court in *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456-57 (Pa. 2015).

Harleysville argues there are no policy terms, nor language in the Amended and Second

Amended Complaint, which clearly identify a covered loss under the policy and, even if the

Court finds ambiguity which triggers the duty to defend, its coverage position was still

reasonable.

In response, Defendant asserts its bad faith claim must survive this motion because

Harleysville failed to offer a defense to Gateway from the inception of this litigation, which was

unreasonable.  Specifically, Harleysville purported to base its denial of coverage on Watson's

Amended Complaint.  However, Gateway points out that the denial of coverage letter predates

Watson's First Amended Complaint.  Gateway argues that this indicates the Original Complaint, rather than Watson's First Amended Complaint, was the basis for Harleysville's denial of coverage.  Gateway goes on to explain that the differences between Watson's Original Complaint and its Second Amended Complaint are night-and-day: the original complaint included negligence-related claims and issues that were deleted in Watson's Second Amended Complaint.  After Gateway challenged Harleysville about the denial of coverage, Harleysville rescinded its original denial of coverage and agreed to defend Gateway under a reservation of rights.  Gateway contends this represented a concession on Harleysville's behalf that they erred in initially denying coverage, which supports its bad faith claim.  Gateway also argues that the investigation conducted by Harleysville into the allegations and facts surrounding Watson's litigation was rushed, incomplete, half-hearted, and faulty, which also supports its claim for bad faith.

Harleysville's Motion for Judgment on the Pleadings on Gateway's bad faith claim simply does not meet the required standard.  Viewing the pleadings in the light most favorable to Gateway, it is not "beyond doubt" that it can plead and prove "no facts" which would support its claim for bad faith.  *Wood*, 925 F.2d at 1581.  There are genuine questions as to whether Harleysville had a reasonable basis to deny coverage at the outset based on the original complaint.

Harleysville claims the First Amended Complaint compares to the Second Amended Complaint, and the First Amended Complaint was their reasonable basis for denying coverage initially.  However, the denial of coverage letter was dated July 6, 2020, which preceded the First Amended Complaint by 25 days.  Therefore, Watson's Original Complaint was the Complaint on which Harleysville must have based their denial of coverage (filed June 1, 2020).  The Original

14

Complaint, unlike the First or Second Amended Complaints, included various counts and allegations of negligence and gross negligence against NCR, Gilbarco, and Gateway. When the complaint asserts an injury which may be within the policy, the insurer is required to defend. *Cadwallader v. New Amsterdam Casualty Co.*, 152 A.2d 484, 488 (Pa. 1959). Therefore, where a claim is potentially within the scope of an insurance policy, the insurer who refuses to defend at the outset does so at its peril. *Id.* If coverage and/or indemnification depends upon the existence or nonexistence of undetermined facts outside the complaint, the insurer has a duty to defend until those facts are determined and the claim is determined to be one outside of coverage. *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Ins. Co.*, 467 F.Supp. 17, 19 (E.D.Pa.1979).

Therefore, viewing the pleadings in the light most favorable to Gateway and drawing all inferences in its favor, it is not "beyond doubt" that Gateway has pled facts to support a potential bad faith claim. *Wood*, 925 F.2d at 1581. It is possible that Watson's Original Complaint comprehended "an injury which may be within the policy" at the time of the denial. *Id.* Moreover, coverage and/or indemnification in this matter depend on the existence of undetermined facts outside the complaint, as discussed above. Therefore, Plaintiff has not demonstrated that the motion for judgment on the pleadings standard has been met for this claim and therefore the motion is also denied as to this claim.

## IV.    CONCLUSION

For the foregoing reasons, Harleysville's Motion for Judgment on the Pleadings will be denied on both counts.  An appropriate Order follows.

**BY THE COURT:**


*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**